IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA



COMMUNITY HEALTH SYSTEMS,

     *Movant,*

v.

BLUE CROSS AND BLUE SHIELD OF
NORTH CAROLINA.

     *Respondent.*

Case No. 24MC3

## COMMUNITY HEALTH SYSTEMS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA

  Movant Community Health Systems ("CHS") respectfully moves the Court for the entry of an order compelling Respondent Blue Cross and Blue Shield of North Carolina ("BCBSNC") to produce documents responsive to one request in CHS's third-party subpoena issued in the matter *Federal Trade Commission v. Novant Health, Inc., Community Health Systems, Inc.*, Civ. A. No. 5:24-CV-00028 (W.D.N.C. 2024). Because BCBSNC is headquartered in the district of this Court, CHS is filing this motion here. Discovery in the underlying litigation began on February 5 and concludes on March 14. CHS believes this matter can be resolved in accordance with the expedited resolution procedures under M.D. N.C. L.R .37.1(b) and respectfully requests expedited resolution pursuant to the same.

  In that underlying action the FTC seeks to enjoin CHS and Novant Health Inc. ("Novant") from completing Novant's acquisition of Lake Norman Regional Medical

Center, an acute care hospital, and Davis Regional Medical Center, a behavioral health facility, by alleging that it will substantially lessen competition between Novant's Huntersville facility and CHS's Lake Norman facility. *See, e.g.*, Perry Decl., Ex. 1 ¶¶ 4–6. CHS and Novant maintain that the proposed transaction will not only cause no harm to competition, but—more importantly— will improve the quality of care at CHS's Lake Norman facility and enhance the intense competition between Atrium Health, Novant, and other health systems in the Charlotte area, resulting in procompetitive effects for payors, patients, and the community.

While the FTC investigated the proposed transaction for over a year, CHS and Novant have a mere five week period to seek discovery and to gather evidence from third-parties to support their defense. As part of that effort, CHS sought discovery from the commercial insurance payors, including BCBSNC, who are listed as witnesses in FTC's case and who the FTC alleges would have less leverage when negotiating with Novant if Novant acquires CHS's suburban Charlotte acute care facility. BCBSNC has responded to the subpoena and produced documents pursuant to it. At issue here is one request for production for which BCBSNC has identified five non-privileged deposition transcripts that BCBSNC has confirmed it has in its possession. The only issue is whether BCBSNC can withhold these files on commercial sensitivity grounds despite the existence of a strong protective order in the underlying matter.

Specifically, CHS seeks deposition transcripts and other materials that BCBSNC produced to the U.S. Department of Justice and North Carolina Department of Justice (the

"*Atrium* Monopolization Documents") in connection with an antitrust investigation and lawsuit in which federal and state antitrust authorities alleged that Atrium Health had unlawfully monopolized inpatient hospital services in the Charlotte area. *United States v. The Charlotte-Mecklenburg Hospital Authority*, 3:16-cv-00311 (W.D.N.C.) ("*Atrium*"). BCBSNC has acknowledged that it possesses the *Atrium* Monopolization Documents and could easily produce at least certain of these materials, but refuses to do so based on confidentiality concerns. Notwithstanding the Protective Order entered by the Court in the present case, which includes strict confidentiality protections and provides for designation of highly confidential materials as outside-counsel-only, *see* Perry Decl., Ex. 3, BCBSNC asserts that producing information regarding contract negotiations with Atrium Health could prejudice BCBSNC because Atrium is Defendant Novant Health's, Inc.'s biggest competitor. BCBSNC also disputes the relevance of these materials to this preliminary injunction proceeding.

BCBSNC's position here illustrates exactly why these materials are so relevant. In the underlying case, the FTC alleges that Novant's proposed acquisition of two CHS hospitals in the Charlotte area will substantially lessen competition in the purported geographic market it dubs the "Eastern Lake Norman Area" and that Atrium—which does not currently operate an inpatient hospital in that region—provides a "limited competitive constraint at most." Perry Decl., Ex. 1 ¶ 80. The FTC's allegations in this case contrast starkly with those asserted by its sister agency and the North Carolina Department of Justice in *Atrium*. In that case, DOJ alleged that **Atrium** is "the dominant hospital system

in the Charlotte area" and that Defendant Novant Health is Atrium's "biggest competitor" in the Charlotte area, which the DOJ defined as consisting of "Cabarrus, Cleveland, Gaston, Iredell, Lincoln, Mecklenburg, Rowan, Stanly, and Union counties in North Carolina, and Chester, Lancaster, and York counties in South Carolina." Perry Decl., Ex. 3, *Charlotte-Mecklenburg* Compl. ¶¶ 2, 21.

Unable to get the information from any other source, CHS sought information BCBSNC and other health insurers submitted to the DOJ that led to the DOJ's enforcement action against Atrium. In response, BCBSNC confirmed that it had a large file it submitted to the DOJ that included transcripts of depositions the DOJ took of five BCBSNC individuals. Perry Decl. ¶ 14. CHS offered to narrow its initial request to "material submitted [to the DOJ] such as interrogatory responses, white papers, presentations, draft allegations or deposition/testimony of any kind." *Id.* ¶ 15; Perry Decl., Ex. 9. BCBSNC refused to produce even the transcripts on confidentiality grounds and only offered to produce its self-selected "snippets" from one of the depositions. Perry Decl. ¶ 17. In response, CHS agreed to BCBSNC's redaction of pricing details, and offered to agree to even stricter restrictions than those provided by the Protective Order. *Id.* ¶ 18; Perry Decl., Ex. 9. BCBSNC objected still that the information was too confidential. *Id.* ¶ 19.

CHS submits that the information sought here is not the Coca-Cola formula. Rather, CHS seeks highly relevant information about healthcare market dynamics in the Charlotte area that BCBSNC already submitted to the DOJ, and that was used by the DOJ to bring an enforcement action. CHS agreed to narrow its already targeted request to reduce any

4

burden, to redact the most-sensitive information, and to establish heightened protections to alleviate any commercial sensitivity concerns. None of it was enough for BCBSNC, and as a result CHS must seek this Court's assistance to discover highly relevant information for its defense. *See* Perry Decl., Ex. 2. CHS hereby requests that the Court order that BCBSNC produce documents responsive to the narrowed request.

## STATEMENT OF FACTS

CHS has just one acute care hospital in North Carolina, Lake Norman Regional Medical Center. CHS converted its other North Carolina hospital, Davis Regional Medical Center, to a behavioral health facility in 2022. As such, it lacks the provider network, patient base, and investment capabilities to deliver the breadth of services, patient access and experience, and quality of care that an integrated healthcare system is able to offer. As a result, Lake Norman Regional is struggling. Although Lake Norman Regional is licensed for 123 beds, its average daily inpatient census is just 39, for an occupancy rate of just 32 percent. Its quality scores are declining, outliers within the CHS network of hospitals and, on many quality measures, lower performing nationally. Similarly, Lake Norman Regional is not a meaningful competitive constraint on Novant, which faces intense competition from many directions, including Atrium Health—the dominant healthcare system in the Charlotte area, which has broken ground on a brand new hospital just 7 miles from Lake Norman Regional. It should come as no surprise then that CHS sought to sell the hospital to a health system that would be better equipped to improve the quality of care for North Carolinians.

Unlike CHS, Novant has a complementary network of healthcare facilities and providers and the capability to invest and revitalize Lake Norman Regional. The transaction will thus enable Novant to turn around a struggling hospital in a way that CHS, which lacks any established network in North Carolina, cannot. The result will be enhanced competition, improved quality of care for patients, greater resources for physicians and other healthcare providers, and reduced costs through improved coordination across the continuum of care. Despite these procompetitive effects, the FTC has sought to enjoin the proposed transaction and filed suit in the Western District of North Carolina.

Four days after the start of discovery, on February 9, 2024, CHS issued a subpoena duces tecum to BCBSNC to request, in part, information it submitted to the DOJ in relation to the *Atrium* investigation. Perry Decl., Ex. 6 at 7. This dispute centers on just that request:

> **REQUEST FOR PRODUCTION NO. 2**: All Communications between You and the Department of Justice or any other governmental entity relating to the Atrium Investigation and Litigation and All Documents produced in the Atrium Investigation and Litigation.

*Id.* On February 14, counsel for BCBSNC confirmed that he was authorized to accept service of the subpoena on BCBSNC's behalf. Perry Decl. ¶ 10; *see also* Perry Decl., Ex. 7. On February 21, CHS identified its five priority requests and highlighted that Request No. 2 was its highest priority. Perry Decl. ¶ 11; Perry Decl., Ex. 7 at 4. On February 29, BCBSNC served its written responses and objected to Request No. 2. Perry Decl. ¶ 12; Perry Decl., Ex. 8. The same day, CHS wrote BCBSNC requesting a conference. Perry Decl. ¶ 13; Perry Decl., Ex. 9 at 8–9. On March 1, BCBSNC said that

its client had a large set of responsive materials, but that it would be too burdensome to review and that it contains commercially sensitive material. Perry Decl. ¶ 14. In response, CHS narrowed its request to "material submitted such as interrogatory responses, white papers, presentations, draft allegations or deposition/testimony of any kind." *Id.* ¶ 15.

In response, BCBSNC confirmed that it had in its possession responsive deposition transcripts. *Id.* ¶ 16. To comply with the request, BCBSNC sought to produce only self-selected snippets of a single transcript to avoid disclosing any testimony about BCBSNC's negotiations with Atrium—the information most relevant to BCBSNC's perception of the Charlotte area healthcare competitive landscape. *Id.* ¶ 17. CHS requested targeted redacted versions of the transcripts, and offered restrictions in addition to the Protective Order. *Id.* ¶ 18. On March 4, counsel for BCBSNC confirmed an impasse. *Id.* ¶ 19.

## LEGAL STANDARD

Rules 34 and 45 authorize a party to issue subpoenas to nonparties and compel the production of non-privileged, relevant materials. Fed. R. Civ. P. 34(c), 45. "The scope of discovery under Rule 45 is the same as that under Rule 26." *E.I. Du Pont De Nemours & Co. v. MacDermid Printing Sols., L.L.C.*, No. 1:10MC39, 2012 WL 733831, at *1 (M.D.N.C. Mar. 6, 2012) (internal citations omitted). "At discovery, relevancy is more properly considered synonymous with 'germane' as opposed to competency or admissibility." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 239 (M.D.N.C. 2010). "The party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Wilson v. Associated Petroleum Carriers, Inc.*, No. 1:21

CV 158-MR-WCM, 2023 WL 2544323, at *3 (W.D.N.C. Mar. 16, 2023).

## ARGUMENT

CHS respectfully requests that the Court order BCBSNC to comply with the subpoena because CHS has "a substantial need for the information that cannot otherwise be met without undue hardship." *See* Fed. R. Civ. P. 45(d)(3)(B)–(C).

The *Atrium* Monopolization Documents, including the five deposition transcripts that BCBSNC has identified, are directly relevant to the FTC's motion for a preliminary injunction in this case. In *Atrium*, the government alleged that Atrium—not Novant or CHS—was the "dominant health system in the Charlotte area" and that the relevant geographic market was a twelve-county area that is significantly broader than the purported geographic market the FTC alleges here. Perry Decl., Exs. 4–5. The testimony and other information that BCBSNC—which is the largest health insurer in North Carolina— provided to federal and state antitrust enforcers to inform their allegations in the *Atrium* case is directly relevant to evaluating the FTC's allegations in this case. Indeed, based on counsel's representations, BCBSNC considers Atrium to be the dominant healthcare provider in the Charlotte area and that Novant is its closest competitor. *See* Perry Decl. ¶ 14; Perry Decl., Ex. 9 at 5. This evidence goes directly to CHS's defense in the underlying litigation, and satisfies the relevancy requirements of Rules 26 and 45. Moreover, production of these materials imposes no burden on BCBSNC as it has located

the transcripts and can produce them within a day. *See* Perry Decl. ¶ 16.[1]

Further, these deposition transcripts cannot be readily obtained from any other source. CHS issued a subpoena to the U.S. Department of Justice, which objected to CHS's subpoena and issued a *Touhy* response detailing its bases for refusing production, *See* Perry Decl., Ex. 10, and compelling the federal government in its capacity as a third party to produce documents over a *Touhy* response is a high barrier. *See COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999) (a non-party governmental agency may only be compelled to comply with a subpoena if its response is "arbitrary, capricious, or otherwise unlawful manner."). As such, CHS has "a substantial need for the information," and BCBSNC is in the best position to provide these documents. *See* Fed. R. Civ. P. 45(d)(3)(B).

Other than disagreeing with the relevance of the *Atrium* Monopolization Documents, BCBCNC's only objection to producing these five deposition transcripts is its purported confidentiality concerns. To the extent that these deposition transcripts that are in fact competitively sensitive, the Protective Order entered in this case is the appropriate mechanism to ensure the protection of those confidentiality interests. *See, e.g., In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 249 (E.D. Pa. 2014) (noting that a nonparty's interest in confidentiality "can be adequately protected with a narrowly-crafted

---

[1] BCBSNC has also only identified one of the five deponents. BCBSNC's corporate representative who is also on the FTC's witness list may be one of the four unidentified deponents and anything he testified to would be highly relevant to his testimony in this action.

protective order."). Further, in an effort to appease BCBSNC, CHS offered even further heightened confidentiality restrictions, including by offering to limit disclosure to Gibson Dunn (CHS's counsel), Williams & Connolly (Novant's counsel), and their experts, as well as redactions of any pricing terms. Perry Decl. ¶ 18. BCBSNC denied CHS's offer. *Id.* ¶ 19.

In the alternative, and if the Court deems it necessary to assist its review, the Court could order an *in camera* review of the transcripts to assess whether redaction of pricing information and the highly confidential outside-counsel-only designation would sufficiently protect any purported commercially sensitive material. *Mason C. Day Excavating, Inc. v. Lumbermens Mut. Cas. Co.*, 143 F.R.D. 601, 604 (M.D.N.C. 1992) ("A district court has discretion in determining whether to conduct an *in camera* review of documents claimed to be privileged, protected or otherwise entitled to confidentiality." (citing *Silets v. U.S. Dept. of Justice*, 945 F.2d 227 (7th Cir. 1991)).

There is no basis for BCBSNC to keep relevant information out of the record based on confidentiality concerns for information where there is no burden to producing (it has the documents), the files are relevant (central issues in the case), and there is a strong protective order already in place (with an offer for even stronger rules limiting disclosure).

## **CONCLUSION**

For the foregoing reasons, CHS respectfully requests that the Court enforce the subpoena issued to BCBSNC and compel the production of any withheld documents to

allow CHS to prepare its defense.

March 8, 2024

Respectfully submitted,

GIBSON DUNN AND CRUTCHER LLP

By: /s/ Sarah F. Hutchins

Michael J. Perry
1050 Connecticut Avenue N.W., Suite 3000 Washington, D.C. 20036-5306
Tel: 202.955.8500
MJPerry@gibsondunn.com

Sarah F. Hutchins (N.C. Bar No. 38172)
PARKER POE ADAMS & BERNSTEIN LLP
Bank of America Tower
620 S. Tryon Street, Suite 800
Charlotte, NC 28202
Tel: (704) 372-9000
Fax: (704) 334-4706
Email: sarahhutchins@parkerpoe.com

*Attorneys For Movant Community Health Systems.*

## MEET AND CONFER CERTIFICATION PURSUANT TO LR. 37.1

As set forth in the accompanying declaration of CHS's counsel, Michael Perry, CHS has made a good faith effort, over several weeks, via video conference and email correspondence to resolve this discovery dispute before filing this motion. Scott Hvidt from Gibson Dunn on behalf of CHS and Janae Staicer of Williams & Connolly on behalf of Novant led the meet and confer process. There were video conferences and phone calls on February 14, February 21, March 1, and March 4 to try to resolve these the subpoena response issues. Perry Decl. Exs. 4, 6.

This the 8th day of March, 2024.

By: /s/ Sarah F. Hutchins

Michael J. Perry
1050 Connecticut Avenue N.W., Suite 3000 Washington, D.C. 20036-5306
Tel: 202.955.8500
MJPerry@gibsondunn.com

Sarah F. Hutchins (N.C. Bar No. 38172)
PARKER POE ADAMS & BERNSTEIN LLP
Bank of America Tower
620 S. Tryon Street, Suite 800
Charlotte, NC 28202
Tel: (704) 372-9000
Fax: (704) 334-4706
Email: sarahhutchins@parkerpoe.com

*Attorneys For Movant Community Health Systems.*

## CERTIFICATE OF COMPLIANCE WITH LR 7.3(d)(1)

I certify that this Memorandum of Law in Support of CHS's Motion to Compel Production of Documents from Blue Cross and Blue Shield of North Carolina complies with Local Rule 7.3(d)(1) and does not exceed 6,250 words.

This the 8th day of March 2024.

By: /s/ Sarah F. Hutchins

Michael J. Perry
1050 Connecticut Avenue N.W., Suite 3000 Washington, D.C. 20036-5306
Tel: 202.955.8500
MJPerry@gibsondunn.com

Sarah F. Hutchins (N.C. Bar No. 38172)
PARKER POE ADAMS & BERNSTEIN LLP
Bank of America Tower
620 S. Tryon Street, Suite 800
Charlotte, NC 28202
Tel: (704) 372-9000
Fax: (704) 334-4706
Email: sarahhutchins@parkerpoe.com

*Attorneys For Movant Community Health Systems.*

# CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing **Memorandum of Law in Support of Motion to Compel** was submitted to the Clerk for filing and served on the undersigned counsel for Respondent via electronic mail and United States First Class Mail as follows:

    James M. Burns
    Williams Mullen
    8350 Broad Street
    Tysons, VA 22102
    jmburns@williamsmullen.com

This the 8th day of March, 2024

    /s/ Sarah F. Hutchins
    Sarah F. Hutchins (NC State Bar No. 38172)
    **PARKER POE ADAMS & BERNSTEIN, LLP**
    620 S. Tryon Street
    Suite 800
    Charlotte, NC 28202
    sarahhutchins@parkerpoe.com
    Tel.: (704) 335-9511
    *Counsel for Movant*